J. Seth Moore
State Bar No. 24027522
semoore@swlaw.com
Zachary A. Cooper
State Bar No. 24137881
zcooper@swlaw.com
**SNELL & WILMER L.L.P.**
2501 North Harwood Street, Suite 1850
Dallas, Texas 75201
Telephone: 214-305-7301
Facsimile: 214-305-7351

Attorneys for *TurningPointe, LLC, d/b/a Turning Point Strategic Advisors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | Case No. 24-33924 | |
| § | | |
| **WATER STATION MANAGEMENT, LLC** § | Chapter 11 | |
| § | | |
| **Debtor.** § | | |

### DECLARATION OF ERIC CAMM IN SUPPORT OF TURNING POINT STRATEGIC ADVISORS' MOTION TO CONFIRM ERIC CAMM'S STATUS AS MANAGER OF WATER STATION MANAGEMENT OR, ALTERNATIVELY, TO EXCUSE TURNOVER PENDING DISMISSAL OR OTHER RELIEF

I, Eric Camm, declare as follows:

1. I am a Principal and the Director of Capital Advisory for Turning Point Strategic Advisors ("**Receiver**"), the general receiver over Creative Technologies, L.L.C., Refreshing USA LLC, and Water Station Management LLC (collectively, "**Debtor Entities**"), appointed by the Superior Court of King County, Washington ("**Washington Court**").

2. I make this declaration in support of Receiver's *Motion to Confirm Eric Camm's Status as Manager for Water Station Management or, Alternatively, to Excuse Turnover Pending*

-1-

*Dismissal or Other Relief* [Dkt. __ ] ("**Motion**"). Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion. Except where indicated, the facts stated herein are based upon my own personal knowledge, and if called upon to testify, I could and would competently testify thereto.

3. I am over the age of 18, and I am competent to testify. This declaration is based on my personal knowledge and my review of documents produced by Ryan Wear and Jeremy Briggs, records provided by third parties as described below, and discussions with former employees of Debtor Entities and their affiliates. At the outset of the receivership described above, Mr. Wear was the Manager of each of the Debtor Entities, and Mr. Briggs was the corporate controller for each of the Debtor Entities. The two of them have continually acted in concert as described below.

4. Exhibit A, attached hereto, are true and correct copies of relevant pages from the Operating Agreements for Refreshing USA LLC and Water Station Management LLC and the relevant amendment to the Operating Agreement for Creative. These documents are more than 20 pages each, so I have submitted only the relevant pages in the interests of brevity. Complete copies are available upon request.

5. Exhibit B, attached hereto, are true and correct copies of the home webpage for Creative, which does business as Water Station Technology, and the "Our Services" webpage for Refreshing.

6. Mr. Wear has told us that the water machines and vending machines sold, owned, or serviced by the Debtor Entities are tracked in a single database platform, on which there is no data to tie machines to investors or lenders. We learned from Richard Brennan that this database is called the Vending Management System ("**VMS**"), and it was created and is maintained by Parlevel Systems. Mr. Brennan is a former employee of the Debtor Entities.

7. Mr. Wear has never given us access to it despite repeated and specific requests by me and our attorneys. We had a subpoena to Parlevel in process when this case was filed. Rather than give us access to VMS, Mr. Wear produced three Excel spreadsheet with thousands of line items purporting to list water machines and vending machines. To limit the amount of paper being submitted, below the topline numbers in the spreadsheets:

| Excel File Name | Type of Asset | Count |
| --- | --- | --- |
| Machine List | Water Machines | 4,889 |
| Machine List – WSM Parlevel with Cost | Water Machines | 5,134 |
| Fixed Assets CT | Vending Machines | 8,813 |

Native electronic files and hard copies of these spreadsheets are available on request, and I hereby make an offer of proof to the extent necessary. Consistent with Mr. Wear's description of the database, the spreadsheets contain no information tying any individual machine to any individual owner or lender. Moreover, the spreadsheet does not include complete list of serial numbers.

8. Mr. Wear has also told us that machine-generated revenue first flows to the payment processor, Cantaloupe Inc., and then into bank accounts in the name of Refreshing and its subsidiaries. From there, it appears from our review of bank statements that Mr. Wear and Mr. Briggs move funds to other entities in random fashion (or, if there is a specific purpose for the transfer, it is not documented in any manner).

9. Recently, we received an Excel spreadsheet from Cantaloupe identifying the deposit accounts to which they transfer funds generated by machines associated with Mr. Wear or Mr. Briggs. Exhibit C, attached hereto, is a version of that spreadsheet modified to consolidate accounts across tabs and to redact individual account numbers to protect privacy. Native electronic files and hard copies of these spreadsheets are available on request, and I hereby make an offer of proof to the extent necessary.

10. <u>Exhibit D</u>, attached hereto, is a true and correct copy of bank statements produced by Mr. Wear. In light of the miniscule balance in Creative's account in May, at the outset of the receivership, I asked Mr. Wear how he expected to make payroll that month. He told me that he would fund payroll from a different source. Our repeated requests to identify the source of funds have gone ignored to this day.

11. Soon after our appointment, we began hearing from stakeholders that Mr. Wear has been marketing the assets of the Debtor Entities in a re-finance or re-capitalization scheme. After investigation, we learned that well before this receivership Mr. Wear engaged an investment banking firm in Los Angeles called AGRA Capital Advisors to orchestrate a re-capitalization.

12. Receiver has always been open to a re-capitalization if it is grounded in real data and results in a better outcome for creditors than a liquidation. To that end, our attorneys and I contacted AGRA to request information relating to the re-capitalization effort.

13. Despite repeated requests to be included in their purported recapitalization efforts, neither AGRA nor Mr. Wear has provided Receiver with complete and reliable data supporting the size and scope of re-capitalization that would be required to satisfy creditors here. Indeed, we were recently told by Bryce Forsberg, CEO of Refreshing, that they intend to exclude Receiver until their deal is on the verge of closing because they saw the receivership as an inconvenient "last piece of the puzzle." As such, they have refused even to name the sources of capital for their purported transaction, nor have they shared any due diligence beyond a draft "Due Diligence Report" from Marcum LLC. As detailed in my colleague's declaration, there appear to be material misstatements in that report. Because AGRA and Mr. Wear would not share the data underling the report, we were forced to issue a third-party subpoena to Marcum LLC. That subpoena was in process when the involuntary petition commencing this case was filed.

14. On August 23, 2024, the Washington Court also appointed me as Manager of the Debtor Entities pursuant to the Washington Consumer Protection Act and the Washington Court's equitable powers in receivership. Mr. Wear was the Manager of the Debtor Entities before that. At the time, Mr. Briggs was the corporate controller for each of the Debtor Entities. As detailed above and in the Motion, Mr. Wear and Mr. Briggs have acted in concert with each other throughout the relevant period.

15. After my appointment as Manager, I reached out to Mr. Wear and Mr. Briggs to set up a meeting in which we would discuss operational issues. They ignored my invitation to meet in person, but we did speak to Mr. Wear on the phone. On Tuesday, August 27, 2024, my colleague, Nick Howe, and I drove up to the Debtor Entities' headquarters office in Everett, Washington, to discuss operational issues in person. During this meeting, Mr. Briggs confirmed again that he had not maintained the books for any of the Debtor Entities throughout calendar year 2024 (*i.e.*, none of the QuickBooks files for any entities were up to date past December of 2023). He also confirmed that he could not allocate cash flow between the Debtor Entities and their affiliates.

16. My most pressing concern is payroll. We learned in the meeting that the Debtor Entities had not made payroll in at least three weeks. Mr. Briggs told us that an employee named "Danielle" handled payroll through Paylocity. I asked him to introduce me to Danielle. He told me she was in a meeting but that he would get the payroll liability report from her when she was available. He then went into his office and locked the door behind him. After about an hour of waiting, Mr. Howe and I knocked on the door and asked when Danielle would be out of her meeting and able to provide the payroll liability. Mr. Briggs told me that he had forgot to tell us that Danielle had left for the day to attend a family matter. I was shocked. Indeed, Mr. Briggs and Mr. Wear never connected me with Danielle or provided any information on payroll. I ultimately had to get her information (email/phone) from Mr. Forsberg.

17. Beyond all of the obfuscation that predated my appointment as Manager of the Debtor Entities, I found Mr. Briggs' and Mr. Wear's intransigence regarding payroll issues to be the last straw. As a result of this evasive behavior and the harm it is causing to other employees, I terminated Mr. Briggs' and Mr. Wear's employment. The rank-and-file employees are victims in this matter and deserve to be paid for their work, especially because they are important to preserving the assets that do exist. I have since secured the headquarters facility and the files that I was able to find to try and preserve what assets remain.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 5th day of September, 2024 at Seattle, Washington.

        /s/Eric Camm
        ERIC CAMM

4892-4211-3249.1